[Cite as *Kalski v. Bartimole*, 2020-Ohio-4137.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

HELEN JEAN KALSKI,                          :

    Plaintiff-Appellant,           :

                                             No. 108995

    v.                             :

TODD W. BARTIMOLE, ET AL.,                  :

    Defendants-Appellees.          :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                AND REMANDED
**RELEASED AND JOURNALIZED:** August 20, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-911658

---

### *Appearances:*

Helen Jean Kalski, *pro se.*

Dave Yost, Attorney General, and Casey P. O'Brien, Attorney General Special Counsel, *for appellee* Ohio Attorney General Collections Enforcement Section.

Reminger Co., L.P.A., Andrew J. Dorman, and Aaren R. Host, *for appellee* Todd W. Bartimole.

RAYMOND C. HEADEN, J.:

{¶ 1} Plaintiff-appellant Helen Jean Kalski ("Kalski") brings this appeal challenging the trial court's orders (1) granting defendant-appellee Todd W. Bartimole's ("Bartimole") Civ.R. 12(C) motion for judgment on the pleadings ("motion for judgment") and thereby dismissing Kalski's complaint against both Bartimole and defendant-appellee The Ohio Attorney General, Collections Enforcement Division ("Attorney General"), and (2) denying Kalski's motion for a more definite statement or, alternatively, a motion to strike Bartimole's answer as moot due to the trial court's granting Bartimole's motion for judgment. For the reasons that follow, we affirm in part, reverse in part, and remand.

## I.   **Factual and Procedural History**

{¶ 2} This matter stems from Kalski filing a legal malpractice complaint against Bartimole on February 25, 2019.

{¶ 3} Under Bartimole's legal representation, Kalski executed a Modification and Restatement of the Trust Agreement of Helen Jean Kalski on July 14, 2010.[1] At that time, Kalski was married to Irvin who subsequently died on December 25, 2010. Bartimole contacted Kalski again on October 9, 2014, to review her estate planning. The parties did not subsequently meet or discuss Kalski's estate planning until August 3, 2016.

---

[1] Kalski claims she and Irvin Kalski ("Irvin") retained Bartimole's services in 2008, but no documentation has been provided to verify that allegation nor is this pertinent to the issues before this court.

**{¶ 4}** On August 3, 2016, Bartimole held an estate planning meeting with Kalski, Kalski's children, and her accountant. Kalski proposes the purpose of the meeting was to establish an irrevocable trust whereas Bartimole states the parties were to evaluate any necessary modifications to Kalski's estate planning. At this meeting, the parties discussed several items, including that the country of Germany allegedly reimburses home health care costs to Holocaust survivors. In prior estate-planning discussions, Bartimole did not advise Kalski and Irvin, a Holocaust survivor, that Germany could pay these costs. Bartimole conceded at the August 3, 2016 meeting that he was unfamiliar with Germany making reparations to Holocaust survivors through the payment of home health care costs. Bartimole also discussed the creation of an irrevocable trust for Kalski.

**{¶ 5}** Bartimole forwarded a letter to Kalski on August 4, 2016, that summarized Kalski's estate planning and voiced concern that Kalski's son, Steven Kalski ("Steven"), was influencing Kalski's preferences with regard to her estate planning. Bartimole reassured Kalski he would draft her legal documents to reflect Kalski's wishes. Bartimole also sent a letter on October 20, 2016, that indicated he had left several unreturned phone messages and requested Kalski call him at her earliest convenience. Kalski did not contact Bartimole following the August 4, 2016, or October 20, 2016 letters. On November 11, 2016, Bartimole sent an invoice to Kalski for services rendered through October 31, 2016. Bartimole purports this was a final invoice, yet the bill did not include any language specifying it was final.

**{¶ 6}** The next communication between the parties was when Kalski forwarded a 15-page letter to Bartimole on December 5, 2016, that detailed Kalski's position regarding Bartimole's alleged legal malpractice and ethical violations. Kalski stated she first learned of Germany's reparations for health care costs to Holocaust victims at the August 3, 2016 meeting. Kalski wrote that if she had known about Germany's reparations, her husband may have received home health care, rather than being committed to various health facilities for which a Medicaid lien now exists.[2] Kalski asserted that Bartimole's actions, including but not limited to his failure to instruct Kalski and Irvin on available German reparations, constituted legal malpractice. Further, Kalski claimed that the estate planning documents drafted by Bartimole did not represent Kalski's wishes; she never read the papers drafted in 2010 until after the August 3, 2016 meeting; and Bartimole's actions resulted in violations of the Ohio Rules of Professional Conduct. Kalski maintained she experienced undue mental anguish resulting from Bartimole's representation. Within the December 5, 2016 letter, Kalski cited the Ohio legal malpractice statute, R.C. 2305.11, and the applicable one-year statute of limitations. Kalski renounced any authorization to Bartimole to "advise third parties of any matters related to" Kalski or Irvin. (December 5, 2016 letter at p. 6.) Kalski stated "Todd W. Bartimole is the very last choice I would suggest as counsel to handle any legal matters pertaining to trust administration or anything else." (December 5, 2016 letter at p.

---

[2] Kalski's claim against the Attorney General stems from a Medicaid lien that totaled $155,447.38 as of May 18, 2017.

11.)    Kalski demanded that Bartimole return all originals and copies of any documents related to her or Irvin's estate planning.    Kalski affixed an indemnification form to be executed by Bartimole whereby he would "relinquish, disavow, nullify and repudiate [his] authority to act in any manner that was previously designated" on behalf of Kalski.  (December 5, 2016 letter at p. 13.)

{¶ 7}    Following his receipt of Kalski's December 5, 2016 letter, Bartimole sent a letter to Kalski dated December 9, 2016.  Bartimole stated his concern that Steven, not Kalski, drafted the December 5, 2016 letter and that it was Steven's will to terminate their professional relationship, not Kalski's.  Bartimole indicated he had left several phone messages asking Kalski to contact him but had received no response, which was uncharacteristic of Kalski.  Bartimole stated his willingness to relinquish Kalski's file to any new counsel she retained.  However, Bartimole wished to first confirm it was Kalski's desire to terminate their relationship.  Bartimole instructed Kalski to execute the enclosed form, witnessed by someone other than Steven, and return it in the provided envelope if she wished to terminate her attorney-client relationship with Bartimole.  Alternatively, if she choose to maintain their professional relationship, she need not respond to the letter.  Bartimole also stated he would not pay Kalski $1,000,000 in alleged damages for legal malpractice — as requested in her December 5, 2016 letter — and denied any wrongdoing including ethical violations, improper communications with her children, or self-dealing during his representation of Kalski.

{¶ 8} At the time Bartimole sent the December 9, 2016 letter, Kalski resided with Steven. Bartimole delivered the letter to Kalski's daughter, Nancy Kalski-Neese ("Nancy"), with a request that she pass the letter to her mom. Bartimole explained in the letter that he sought Nancy's assistance because he was concerned that a letter mailed to Kalski's home address would be read by Steven, rather than Kalski, preventing Kalski the opportunity to directly respond to Bartimole. Bartimole did not reveal the contents of the letter to Kalski's daughter although apparently Nancy read the letter prior to its delivery to Kalski. Kalski failed to respond to Bartimole's December 9, 2016 letter.

{¶ 9} On December 23, 2016, Lake County Job and Family Services received an anonymous complaint that Kalski was isolated by Steven and prevented from contacting her other children. Kalski suggests Bartimole may have been involved with the anonymous tip but provides no confirmation. This complaint was investigated and dismissed, without merit, in early 2017.

{¶ 10} On December 26, 2016, two days after the complaint was filed with the Lake County Job and Family Services, Kalski filed a grievance letter with the Ohio Supreme Court. The grievance letter stated Bartimole no longer represented Kalski. On six typed pages, Kalski stated her belief that Bartimole committed legal malpractice and conducted himself unethically and that Kalski was subject to elder abuse by Bartimole and various family members. Kalski referenced Bartimole's December 9, 2016 letter and accused him of contacting her daughter rather than Kalski directly. Kalski discussed her July 14, 2010 estate planning documents and

her interpretation that they granted Bartimole, as trustee, the ability to prevent Steven from inheriting under her will. Kalski discussed termination of her relationship with Bartimole and stated, "The carelessness of the language sought by Mr. Bartimole to terminate his services [in his December 9, 2016 letter] reinforces the validity of my decision to end his representation of me." (December 26, 2016 grievance letter at p. 6.) Additionally, Kalski provided these comments regarding termination:

> Yet the statute of limitations referenced in my December 5, 2016 letter does not begin to run until the attorney-client relationship ends. According to Mr. Bartimole's December 9, 2016 dated letter, he is still my attorney. These proceedings should correct that situation.

(December 26, 2016 grievance letter at p. 6.)

{¶ 11} On January 31, 2017, the Disciplinary Counsel for the Supreme Court of Ohio notified Kalski it had initiated an investigation based upon her accusations. Kalski was instructed to seek legal advice relative to legal matters unrelated to the alleged violations of the Ohio Rules of Professional Conduct and the Ohio Code of Judicial Conduct. The Disciplinary Counsel subsequently notified Kalski on June 30, 2017, that the investigation of Bartimole revealed no ethical violations or improprieties in his representation of Kalski and her grievance was dismissed.

{¶ 12} On February 15, 2017, during the pendency of the grievance complaint, Nancy filed a petition in Lake County P.C. No. 17 GU 1027, advocating for the appointment of a guardian for Kalski. Bartimole argues that Nancy withdrew the application on May 9, 2017. Kalski contends the case remained open until

January 17, 2019. [3] Competing expert evaluations were filed with the court with regard to Kalski's competency. Ultimately, Kalski was declared competent.

{¶ 13} On March 1, 2018, Kalski's newly retained elder lawyer requested, via letter, that Bartimole provide the original estate planning documents he drafted for Kalski. Kalski claims Bartimole failed to return any documents.

{¶ 14} On February 25, 2019, Kalski, pro se, filed a complaint against Bartimole and the Attorney General in Cuyahoga C.P. No. CV-19-911658. The complaint alleged legal malpractice by Bartimole and sought to limit the Attorney General's recovery of a Medicaid lien from Kalski to the maximum amount allowed by applicable law. Bartimole filed a timely answer.[4] On April 1, 2019, Bartimole filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C). The Civ.R. 12(C) motion was denied, subject to reconsideration, on April 13, 2019,

---

[3]Upon consideration of a Civ.R. 12(B) motion, a trial court cannot take judicial notice of court proceedings in another case, but only take judicial notice of prior proceedings in the immediate case. *Harris v. Pro-Lawn Landscaping, Inc.*, 8th Dist. Cuyahoga No. 97302, 2012-Ohio-498, ¶ 9, citing *NorthPoint Properties, Inc. v. Petticord*, 179 Ohio App.3d 342, 2008-Ohio-5996, 901 N.E.2d 869, ¶ 16 (8th Dist.). Similarly, an appellate court can take judicial notice of the lower court's docket in the same case before it. *State v. Baird*, 8th Dist. Cuyahoga No. 108515, 2020-Ohio-2717, ¶ 5, fn. 2.

[4] The docket does not reflect an answer filed by the Attorney General. However, on April 11, 2019, Kalski filed plaintiff's motion for definite statement; alternatively motion to strike defendant Office of the Ohio Attorney General Collections Enforcement Section, also known as Ohio Department of Job and Family Services Medicaid Recovery, answer and plaintiff's motion for an accounting. Within that motion, Kalski references specific paragraphs of the Attorney General's answer thereby indicating that such a pleading was filed with the court. The absence of this pleading within the appellate file did not adversely affect our review since the issues raised in this appeal do not require this court's reading of the Attorney General's answer.

because Kalski, as a pro se litigant, did not receive service of the pleading through the court's electronic filing system.

{¶ 15} Kalski filed a motion for a more definite statement or, in the alternative, a motion to strike with regard to Bartimole's and the Attorney General's answers on April 11, 2019. The court denied these motions as moot through a journal entry dated April 15, 2019.

{¶ 16} On April 22, 2019, Bartimole filed a motion for leave to file instanter a brief in support of its motion for judgment on the pleadings. The trial court granted the motion for leave to file instanter and, on September 5, 2019, granted Bartimole's Civ.R. 12(C) motion finding Kalski's claims were time-barred by Ohio's one-year statute of limitations for legal malpractice claims. Kalski's case was dismissed with prejudice against both Bartimole and the Attorney General.

{¶ 17} Following the court's ruling on Bartimole's Civ.R. 12(C) motion, Kalski filed this timely appeal arguing three assignments of error.

## II. Law and Analysis

### A. Motion for More Definite Statement or, Alternatively, Motion to Strike

{¶ 18} In her first assignment of error, Kalski argues that the trial court abused its discretion when it found her motion for a more definite statement, or alternatively, a motion to strike Bartimole's answer, moot. We disagree.

{¶ 19} Following the filing of Kalski's complaint, Bartimole filed a timely answer on April 1, 2019. On April 11, 2019, Kalski filed a motion for more definite statement or, alternatively, a motion to strike Defendant Todd W. Bartimole's

answer. Specifically, Kalski took issue with Bartimole's use of the terms "deny" and "deny for want of knowledge" without providing detailed responses to the allegations within the complaint. Kalski's motion sought precise information that would normally be obtained through the discovery process and sought to strike the majority of the answer. The trial court's April 15, 2019 journal entry provides the basis for its denial of Kalski's motion:

> Plaintiff's motion for definite statement; alternatively, motion to strike defendant Todd W. Bartimole's answer, filed 04/11/2019, is denied as moot.
>
> * * *
>
> Civ.R. 12(E) motion for definitive statement is limited and can only be used against a pleading to which a responsive pleading is permitted. Since a responsive pleading is not permitted to an answer to a complaint, a Civ.R. 12(E) motion may not be directed against it. Further, Civil Rule 12(E) is designed to strike at unintelligibility, rather than want of detail. A motion for definite statement should not be granted to require evidentiary detail that may be the subject of discovery: (decided under former analogous section) *Columbia Gas of Ohio, Inc. v. Robinson*, 81 Ohio Misc.2d 15, 673 N.E.2d 701, 1996 Ohio Misc. LEXIS 42 (MC 1996).[5]

{¶ 20} Civ.R. 12 that the trial court referenced in the above journal entry, states, in pertinent part:

> (E) Motion for definite statement.
>
> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a definite statement before interposing his responsive pleading. The motion shall point out the

---

[5] The journal entry also addresses Kalski's motion against the Attorney General for more definite statement; alternatively, motion to strike. Kalski does not appeal the trial court's ruling on this portion of her motion, and therefore, we will not address the portion of the journal entry that discusses the Attorney General.

defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within fourteen days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

(F) Motion to strike.

Upon motion made by a party before responding to a pleading, or if no responsive pleading is permitted by these rules, upon motion made by a party within twenty-eight days after the service of the pleading upon him or upon the court's own initiative at any time, the court may order stricken from any pleading an insufficient claim or defense or any redundant, immaterial, impertinent or scandalous matter.

Civ.R. 12.

{¶ 21} A Civ.R. 12 (E) motion for definite statement is directed to a pleading that requires a responsive pleading, such as a complaint or a cross-claim. Civ.R. 7(A). *See also Bank of New York v. Damsel*, 10th Dist. Franklin No. 00AP-46, 2006-Ohio-4071, ¶ 18. An answer does not require a responsive pleading, and Kalski incorrectly attempted to find Bartimole's answer subject to a Civ.R. 12(E) motion. Civ.R. 12(E); *see Boddie v. Landers*, Franklin C.P. No. 14CV 10846, 2015 Ohio Misc. LEXIS 22403, 2 (Feb. 5, 2015) (Civ.R. 12(E) is inapplicable to an answer that does not require a responsive pleading).

{¶ 22} Pursuant to Civ.R. 12 (F), Kalski requested the court to strike those portions of Bartimole's answer that were insufficiently detailed. A motion to strike is reviewed for an abuse of discretion. *Abernethy v. Abernethy*, 8th Dist. Cuyahoga No. 81675, 2003-Ohio-1528, ¶ 7. An abuse of discretion signifies the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 23} Ohio's notice pleading does not require pleading with particularity. *Collier v. Libations Lounge, L.L.C.*, 8th Dist. Cuyahoga No. 97504, 2012-Ohio-2390, ¶ 24. In accordance with Civ.R. 8, Bartimole provided an answer that included partial admissions as well as denials and raised a number of affirmative defenses in short and plain terms. Civ.R. 8(B). Bartimole's answer satisfied Ohio's notice-pleading standards, and therefore, was not subject to being stricken under Civ.R. 12(F). The trial court did not abuse its discretion when it denied Kalski's motion to strike.

{¶ 24} For the foregoing reasons, Kalski's first assignment of error lacks merit and the trial court did not abuse its discretion when it found Kalski's motion for a more definite statement under Civ.R. 12(E) or, alternatively, her motion to strike under Civ.R. 12(F) moot.

## B. Motion for Judgment on the Pleadings

{¶ 25} Kalski contends in her second assignment of error that the trial court erred when it determined Kalski's complaint was filed outside the statute of limitations and granted Bartimole's motion for judgment under Civ.R. 12(C). Specifically, Kalski argues her complaint filed on February 25, 2019, was submitted before the one-year legal malpractice statute of limitations expired because (1) Kalski's attorney-client relationship with Bartimole terminated on March 1, 2018, triggering the one-year statute of limitations, (2) the pending action that questioned Kalski's competency tolled the statute of limitations until January 17, 2019, or (3) equitable estoppel precluded Bartimole from claiming the statute of limitations

had expired. Bartimole maintains that Kalski filed her legal malpractice claim outside of R.C. 2305.11's one-year statute of limitation. We agree with Bartimole.

{¶ 26} Civ.R. 12(C) reads: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A determination of a Civ.R. 12(C) motion takes into consideration the complaint, answer, and any materials attached as exhibits to those pleadings. *Schmitt v. Educational Serv. Ctr.*, 8th Dist. Cuyahoga No. 97623, 2012-Ohio-2210, ¶ 9. A Civ.R. 12(C) motion necessitates finding no material factual issues exist and, as a matter of law, the movant is entitled to judgment. *Socha v. Weiss*, 2017-Ohio-7610, 97 N.E.3d 818, ¶ 9 (8th Dist.). It is appropriate to grant dismissal under Civ.R. 12(C) where the court (1) considers the material allegations of the pleadings, and all reasonable inferences to be drawn therefrom, in a light most favorable to the nonmoving party, and (2) finds beyond doubt that no set of facts can be proven by the plaintiff in support of her claim that would entitle her to relief. *Id.* at ¶ 9. Civ.R. 12(C) relief is warranted if defendant raised a statute of limitations defense and the pleadings show the action was filed after expiration of the statute of limitations period. *Mangelluzzi v. Morley*, 2015-Ohio-3143, 40 N.E.3d 588, ¶ 9 (8th Dist.).[6]

---

[6] Bartimole raised the affirmative defense of statute of limitations in his answer. ([Bartimole's] Answer to plaintiff's complaint at 4.)

**{¶ 27}** On appeal, a Civ.R. 12(C) motion for judgment raises only questions of law that are reviewed under a de novo standard of review. *Cohen v. Bedford Hts.*, 8th Dist. Cuyahoga No. 101739, 2015-Ohio-1308, ¶ 7.

### 1. Statute of Limitations for Legal Malpractice Claims

**{¶ 28}** Per R.C. 2305.11(A), a legal malpractice complaint must be filed within one-year after the action accrues:

> (A) An action for libel, slander, malicious prosecution, or false imprisonment, *an action for malpractice* other than an action upon a medical, dental, optometric, or chiropractic claim, or an action upon a statute for a penalty or forfeiture *shall be commenced within one year after the cause of action accrued*, provided that an action by an employee for the payment of unpaid minimum wages, unpaid overtime compensation, or liquidated damages by reason of the nonpayment of minimum wages or overtime compensation shall be commenced within two years after the cause of action accrued.

(Emphasis added.) R.C. 2305.11.

**{¶ 29}** A legal malpractice action accrues, thereby triggering the start of the statute of limitations,

> when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.

*Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 58, 538 N.E.2d 398 (1989).

**{¶ 30}** On review, a court determines both the occurrence of the cognizable event and the date of termination of the professional relationship. The statute of limitations begins to toll from the later of those two dates, and hence, a legal

malpractice complaint must be timely filed within one-year of the later of the two dates.

### a. Cognizable Event

{¶ 31} Kalski purports the closure on the January 17, 2019 Lake County Probate proceeding — a case that questioned Kalski's competency — represents the cognizable event when she knew or should have known about Bartimole's alleged legal malpractice. (Plaintiff's opposition to defendant Todd Bartimole's motion for judgment on the pleadings at 8.) Bartimole argues a cognizable event occurred when Kalski drafted a December 5, 2o16 letter to him identifying her allegations of legal malpractice. We find the attorney-client meeting held on August 3, 2016, served as the cognizable event when Kalski discovered or should have discovered that her alleged injuries were related to Bartimole's acts.

{¶ 32} "A 'cognizable event' is an event that is 'sufficient to alert a reasonable person that his or her attorney may have committed an improper act and that further investigation is needed.'" *Dottore v. Vorys, Sater, Seymour & Pease, L.L.P.*, 8th Dist. Cuyahoga No. 98861, 2014-Ohio-25, ¶ 58, quoting *Trustees of Ohio Carpenters' Pension Fund v. U.S. Bank Natl. Assn.*, 189 Ohio App.3d 260, 2010-Ohio-911, 938 N.E.2d 61, ¶ 10 (8th Dist.). The cognizable event puts the plaintiff on notice, or should have put the plaintiff on notice, to investigate the facts and circumstances relevant to her legal malpractice claim so that she may potentially pursue remedies against her attorney. *Asente v. Gargano*, 10th Dist. Franklin No. 04AP-278, 2004-Ohio-5069, ¶ 14. "The focus is on what the client is or should

be aware of and how a reasonable person would react under the circumstances." *Socha*, 2017-Ohio-7610, 97 N.E.3d 818, at ¶ 13.

{¶ 33} Here, the August 3, 2016 meeting between Kalski, her children, her accountant, and Bartimole constituted the cognizable event that placed Kalski on notice to investigate a potential legal malpractice action against Bartimole. The topic of Germany's reparations to Holocaust survivors for home health care costs — the basis of Kalski's legal malpractice claim — was discussed at the August 3, 2016 meeting. Per Kalski, Bartimole informed the individuals present at the meeting that "he had never heard of such a thing." (December 5, 2016 letter at p. 2.) Although Kalski relied upon Bartimole's legal expertise in elder law, including knowledge that Holocaust survivors could seek compensation from the state of Germany for home health care costs, Bartimole conceded on August 3, 2016, his unfamiliarity with this issue.

{¶ 34} Bartimole's failure to notify Kalski about the German reparations and to facilitate repayment of health care costs through such a program was the crux of Kalski's legal malpractice cause of action: "Todd W. Bartimole committed legal malpractice beyond the above described misconduct by failing to advise Helen Jean Kalski what was required to have Germany pay for spouse Irvin Kalski's home care prior to Irvin Kalski's death on December 25, 2010 (Exhibit A)." (Complaint at ¶ 22.) An individual need not be fully aware of the extent of his legal malpractice injuries to initiate the statute of limitations. *Krzywicki v. Gay*, 8th Dist. Cuyahoga No. 105039, 2017-Ohio-5584, ¶ 17. Knowledge of a potential problem starts the

statute to run, even when one does not know all the details. *Id.* at ¶ 17, citing *Griggs v. Bookwalter*, 2d Dist. Montgomery No. 21220, 2006-Ohio-5392, ¶ 20. Thus, even if Kalski gleaned more information regarding her legal malpractice action against Bartimole at a later date, the August 3, 2016 meeting was the cognizable event when Kalski should have been alerted to the fact that Bartimole may have committed an improper act and further investigation was needed.

### b. Termination of Attorney-Client Relationship

{¶ 35} In addition to identifying the cognizable event, we must determine when Kalski's attorney-client relationship with Bartimole terminated. Kalski argues that the attorney-client relationship terminated when her new elder law attorney sent a letter on March 1, 2018, to Bartimole and requested he return the original estate documents. Bartimole contends that Kalski terminated the relationship either upon the issuance of her December 5, 2016 letter or submission of her grievance letter to the Ohio Supreme Court on December 26, 2016. We find the attorney-client relationship terminated on December 26, 2016.

{¶ 36} The determination of when an attorney-client relationship terminated is typically a factual question resolved by the trier of fact. *Kinasz v. Dickson*, 2018-Ohio-1754, 110 N.E.3d 1034, ¶ 22 (8th Dist.), citing *Mobberly v. Hendricks*, 98 Ohio App.3d 839, 843, 649 N.E.2d 1247 (9th Dist.1994). However, when either the attorney or client takes affirmative actions that are so inconsistent with a continued relationship, the question of when any attorney-client relationship has ended may be taken away from the trier of fact and decided as a matter of law.

*Steindler v. Meyers, Lamanna & Roman*, 8th Dist. Cuyahoga No. 86852, 2006-Ohio-4097, ¶ 11.

{¶ 37} "[T]he attorney-client relationship is consensual in nature and the action of either party can affect its continuance." *Brown v. Johnstone*, 5 Ohio App.3d 165, 167, 450 N.E.2d 693 (9th Dist.1982). To determine when the professional relationship terminated, courts look for specific acts by either the attorney or client that indicate a severance of the relationship. *O'Driscoll v. Paoloni*, 11th Dist. Portage No. 2016-P-0031, 2016-Ohio-8520. Conduct by either party that dissolves the essential mutual confidences of the attorney-client signals the termination of the relationship. *Brown* at paragraph 1 of the syllabus. "'"[T]he termination of the attorney-client relationship depends, not on a subjective loss of confidence on the part of the client, but on conduct, an affirmative act by either the attorney or the client that signals the end of the relationship.'"" (Emphasis deleted.) *O'Driscoll* at ¶ 19, quoting *Duvall v. Manning*, 11th Dist. Lake No. 2010-L-069, 2011-Ohio-2587, ¶ 27, quoting *Mastran v. Marks*, 9th Dist. Summit No. 14270, 1990 Ohio App. LEXIS 1219 (Mar. 28, 1990).

{¶ 38} Varied acts constitute termination of the attorney-client relationship. Ohio law generally recognizes that the retention of new counsel to handle issues previously managed by a former attorney indicates the former attorney-client relationship has been terminated. *Accelerated Sys. Integration, Inc. v. Ritzler, Coughlin & Swansinger, Ltd.*, 8th Dist. Cuyahoga No. 97481, 2012-Ohio-3803, ¶ 50. In *Kinasz*, where the client mailed a letter to her attorney explicitly stating the

attorney and his associates were terminated, and the attorney subsequently filed a motion to withdraw as counsel, the relationship terminated on the date of the client's letter. *Kinasz* at ¶ 25-26. Yet, a formal letter of termination is not required to extinguish the relationship. *Brown* at 166-167. The filing of a bar complaint that included a sworn statement that the client already terminated his relationship with his attorneys, coupled with the client's employment of new counsel who entered an appearance on behalf of the client the prior week, evidenced a sufficient loss of confidence in his attorneys to indicate a termination of the attorney-client relationship. *Erickson v. Misny*, 8th Dist. Cuyahoga No. 69213, 1996 Ohio App. LEXIS 1878, 16 (May 9, 1996); c*ompare Dzambasow v. Abakumov*, 8th Dist. Cuyahoga No. 86021, 2005-Ohio-6719, ¶ 33-35 (The filing of a bar grievance did not sever the attorney-client relationship where, following the filing of the bar grievance, the attorney contacted the client and filed a motion on behalf of the client.). "Pro se filings after the rendering of a judgment are evidence that the attorney-client relationship has been terminated." *Triplett v. Benton*, 10th Dist. Franklin No. 03AP-342, 2003-Ohio-5583, ¶ 16, citing *State v. Wente*, 8th Dist. Cuyahoga No. 1721, 2003-Ohio-3659, ¶ 5.

{¶ 39} Here, Kalski's December 26, 2016 grievance letter and the lack of any subsequent contact between Kalski and Bartimole demonstrated termination of the attorney-client relationship on December 26, 2016. Kalski initially forwarded a December 5, 2016 letter to Bartimole that described how Bartimole failed to advise her on obtaining reparations from Germany to fund Irvin's home health care costs.

Kalski expressly revoked any authorization to Bartimole to "advise third parties of any matters related to myself or my deceased husband." (December 5, 2016 letter at p. 6.) Kalski also stated that Bartimole was "the very last choice I would suggest as counsel to handle any legal matters pertaining to trust administration or anything else." (December 5, 2016 letter at p. 11.) Affixed to the December 5, 2016 letter was an indemnification form — that Kalski asked Bartimole to execute — whereby Bartimole "relinquished [his] authority to serve in any capacity for or on behalf of any interest of Helen Jean Kalski, Irvin Kalski (deceased), Steven Kalski, Richard Kalski, Rochelle Kalski, and/or Nancy Kalski-Neese and/or their descendants * * *". (December 5, 2016 letter, Indemnification from any Litigation, at p. 14-15.)

{¶ 40} Upon receipt of Kalski's December 5, 2016 letter, Bartimole forwarded Kalski a letter, dated December 9, 2016, stating Bartimole was concerned that Kalski's son drafted the December 5, 2016 letter and was exerting control over Kalski's decision making. Bartimole asked Kalski to sign and return the enclosed letter if she wished to terminate their attorney-client relationship or, if she preferred to retain Bartimole as her attorney, she could take no action. Based upon Bartimole's December 9, 2016 letter, one could reasonably assume Bartimole was unclear whether the professional relationship was still intact. Kalski did not directly respond to Bartimole's December 9, 2016 letter, suggesting she considered Bartimole her counsel. However, upon the drafting of her December 26, 2016 grievance letter, there was no question that Kalski had lost confidence in Bartimole and taken action to sever their relationship.

{¶ 41} The grievance form signed by Kalski specifically stated on the document's cover page that Bartimole no longer represented her. Kalski communicated her intent to terminate the attorney-client relationship within the grievance letter: "[t]he carelessness of the language sought by Mr. Bartimole to terminate his services *reinforces the validity of my decision to end his representation of me.*" (Emphasis added.) (December 26, 2016 letter at p. 6.) Additional statements within the grievance letter demonstrated Kalski's termination of the professional relationship with Bartimole:

> According to Mr. Bartimole's December 9, 2016 dated letter, he is still my attorney. These proceedings should correct that situation.

(December 26, 2016 grievance letter at p. 6.) There is no allegation that Bartimole performed any legal work for Kalski or provided Kalski any legal counsel at any time following the December 26, 2016 letter, further evidencing a termination of the party's professional relationship. *See Socha*, 2017-Ohio-7610, 97 N.E.3d 818, at ¶ 20 (the absence of counsel providing additional legal services beyond the conclusion of a probate matter demonstrated termination of the attorney-client relationship).

{¶ 42} In her complaint, Kalski concedes she attempted to terminate the attorney-client relationship in December 2016, but argues those efforts were insufficient: "Efforts by Helen Jean Kalski to terminate the attorney[-]client relationship between Helen Jean Kalski and Todd W. Baltimore as early as December 5, 2016 (Exhibit A) and December 26, 2016 (Exhibit H) were inadequate

to terminate the attorney[-]client relationship that did not end before March 1, 2018." (Complaint at ¶ 24.) On March 1, 2018, Kalski's new elder law attorney forwarded a letter to Bartimole and requested the return of Kalski's original estate planning documents drafted by Bartimole. (Complaint at ¶ 23.) Kalski contends the retention of new counsel in March 2018 terminated her professional relationship with Bartimole. The March 1, 2018 letter had no impact on extinguishing the profession relationship between Kalski and Bartimole because it was Kalski's own actions — drafting and mailing the grievance letter on December 26, 2016 — that demonstrated Kalski's loss of confidence in Bartimole and represented an affirmative act that signaled the end of the attorney-client relationship.

{¶ 43} Kalski argues that an ongoing challenge of her competency, alluded to in Bartimole's August 4, 2016, and December 9, 2016 letters and demonstrated through proceedings in Lake County, tolled the statute of limitations in her legal malpractice action. On December 23, 2016, an anonymous caller registered a complaint with the Lake County Job and Family Services and stated Kalski was isolated by her son, Steven, who prevented Kalski from interacting with her family. Additionally, Nancy filed an involuntary guardian application on February 15, 2017, with the Lake County Probate Court, refuting Kalski's competency. (Complaint at ¶ 6.) Kalski denied the accusations filed with the Lake County Job and Family Services and opposed the involuntary guardianship application, steadfastly maintaining her competency to conduct legal matters. Kalski insists that the competency proceedings were a sham, as demonstrated by their ultimate dismissal,

but tolled the statute of limitations of her legal malpractice claim until January 17, 2019. Kalski's reliance on *Grimes v. Grimes*, 173 Ohio App.3d 537, 2007-Ohio-5653, 879 N.E.2d 247 (4th Dist.), is unfounded. The *Grimes* court found the plaintiff's claim for tortious interference with an expectancy of inheritance ("interference claim") could not be pursued at the general court division if relief were available through the probate court. Therefore, where the probate court had not reached a conclusion on the interference claim, the issue was not ripe for the general court division; the trial court lacked jurisdiction to grant a motion for summary judgment until the probate court resolved the claim. The same philosophy does not apply here where the general court division had jurisdiction to hear Kalski's legal malpractice claim. Further, to toll a statute of limitations on the basis of competency, a party must argue she was of unsound mind or mental deficiency and present specific details in support of that claim. *Lessman v. Denny's, Inc.*, 8th Dist. Cuyahoga No. 75044, 2000 Ohio App. LEXIS 3024, 25 (July 6, 2000). Kalski does not propose she was of unsound mind, but contends she was competent at all times. Kalski cannot both deny the validity of the competency proceedings and suggest such proceedings tolled the statute of limitations in her legal malpractice claim.

{¶ 44} Similarly, the doctrine of equitable estoppel did not preclude the trial court from finding Kalski's complaint was filed outside the statute of limitations. "The purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz*, 51 Ohio St.3d 143, 145, 555 N.E.2d 630 (1990). "Equitable estoppel prevents relief when one party

induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." *State ex rel. Chavis v. Sycamore City School Dist. Bd. of Edn.*, 71 Ohio St.3d 26, 34-35, 641 N.E.2d 188 (1994), citing *State ex rel. Madden v. Windham Exempted Village School Dist. Bd. of Edn.*, 42 Ohio St.3d 86, 90, 537 N.E.2d 646 (1989). To apply equitable estoppel as a bar to a statute of limitations defense, the plaintiff must show specific actions by the defendant that precluded the timely filing of the lawsuit. *Allegretti v. York*, 2017-Ohio-104, 80 N.E.3d 1248, ¶ 8 (8th Dist.). A false assumption that the competency hearings tolled the statute of limitations is not equivalent to a fraudulent act that prevented Kalski from filing a timely legal malpractice action. *See also Doe v. Archdiocese of Cincinnati*, 109 Ohio St.3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 42-50 ("'It is therefore fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit * * *.'" *Doe* at ¶ 45, quoting *Zumpano v. Quinn*, 6 N.Y.3d 666, 674, 849 N.E.2d 926, 816 N.Y.S.2d 703, (2006)).

{¶ 45} We find the cognizable event occurred on August 3, 2016, and the party's attorney-client relationship terminated on December 26, 2016. Relying on R.C. 2305.11(A), Kalski's legal malpractice claim began to toll on the later of those dates, December 26, 2016, and the complaint had to be filed within one year. Kalski filed her complaint on February 25, 2019, well beyond the one-year statute of limitations.

{¶ 46} For the foregoing reasons, we find Kalski's second assignment of error is without merit and the trial court properly granted Bartimole's Civ.R. 12(C) motion for judgment.

### C. Cause of Action Against Ohio Attorney General

{¶ 47} In her third assignment of error, Kalski asserts the trial court erred and abused its discretion when it dismissed her complaint against the Attorney General. Specifically, Kalski argues that the Attorney General's claim was not governed by the legal malpractice statute of limitations and, therefore, the court's ruling on Bartimole's Civ.R. 12(C) motion was not dispositive of Kalski's cause of action against the Attorney General. The Attorney General asserts the trial court determined Kalski could not prevail on the alleged facts, and therefore, the trial court sua sponte dismissed Kalski's claim against the Attorney General.

{¶ 48} In her original complaint, Kalski named the Attorney General as a defendant and sought "the amount recoverable from plaintiff for the Medicaid debt against decedent Irvin Kalski's successors in interest be limited to the maximum permitted by law." (Complaint at ¶ 11.) The facts related to Kalski's legal malpractice and Bartimole's Civ.R. 12(C) motion were not related to Kalski's cause of action against the Attorney General.

{¶ 49} The court's journal entry, filed on September 5, 2019, reads, verbatim:

> Defendant's motion for leave to file instanter a short reply brief in support of motion for judgment on the pleadings, filed 04/22/2019, is granted.

Defendant's motion for judgment on the pleadings, filed 04/01/2019, was denied, subject to reconsideration, on 04/13/2019[,] [a]s defendant failed to perfect service of its motion on the plaintiff as required by Loc.R. 39(I)(2). As defendant has now properly served plaintiff of his motion for judgment on the pleadings, the court will consider said motion.

Pursuant to Civ. R. 12(C), defendant motion for judgment on the pleadings is granted. As plaintiff failed to timely assert her claims against the defendant and her claim is time-barred by Ohio's one-year statute of limitations for legal malpractice claims. Plaintiff's case is dismissed with prejudice and remove from the court's active docket. Court cost assessed to the plaintiff(s).

The journal entry also states the case is dismissed with prejudice and the journal entry is final.

{¶ 50} A court speaks through its journal entry. *State ex rel. Foxall v. Cossairt*, 146 Ohio St. 328, 332, 65 N.E.2d 870 (1946). The journal entry references defendant's motion for judgment on the pleadings — a motion filed by Bartimole, not the Attorney General. The Attorney General never filed a motion to dismiss under Civ.R. 12 nor did it attempt to join Bartimole's Civ.R. 12(C) motion. A plain reading of the journal entry shows that the motion for judgment on the pleadings, and subsequent dismissal with prejudice, was granted to Bartimole because Kalski's legal malpractice action was time-barred. The September 5, 2019 journal entry makes no mention of the Attorney General nor a sua sponte dismissal.

{¶ 51} The Attorney General correctly argues that a trial court may sua sponte grant a motion to dismiss. "The Rules of Civil Procedure neither expressly permit nor forbid courts to sua sponte dismiss complaints." *State ex rel. Edwards v. Toledo City School Dist. Bd. of Edn.*, 72 Ohio St.3d 106, 108, 647 N.E.2d 799

(1995). Generally, a 12(B)(6) motion can be granted, sua sponte, by a trial judge after the nonmoving party is provided notice of the court's intention and an opportunity to respond. *Preferred Capital, Inc. v. Check Mate Priority Servs.*, 8th Dist. Cuyahoga No. 89894, 2008-Ohio-2657, ¶ 19, citing *Mayrides v. Franklin Cty. Prosecutor's Office* 71 Ohio App.3d 381, 383-384, 594 N.E.2d 48 (10th Dist. 1991). However, courts have found that sua sponte dismissals, absent notice or an opportunity to respond, are fundamentally unfair to the parties and courts are reluctant to affirm such dismissals. *Mayrides* at 383.

{¶ 52} A review of the docket shows the trial court provided no notice that it considered a sua sponte dismissal of Kalski's complaint against the Attorney General. It would be pure conjecture for this court to assume the trial court intended to grant a sua sponte dismissal of Kalski's complaint against the Attorney General. Based upon the pleadings filed by the parties and the language of the journal entry, we find that the trial court dismissed Kalski's claims against Bartimole and made no ruling as to the Attorney General. We make no finding on the merits of Kalski's claim against the Attorney General but determine her cause of action against the Attorney General remains pending.

{¶ 53} Thus, Kalski's third assignment of error is meritorious; the dismissal against the Attorney General is reversed and remanded so that Kalski can proceed against the Attorney General.

{¶ 54} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellee Attorney General and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

RAYMOND C. HEADEN, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR