[Cite as *Kaltenbach v. Wasserman*, 2023-Ohio-1778.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

Keith W. Kaltenbach                                    Court of Appeals No.  WD-22-039

　　　　Appellant                                       Trial Court No.  2020CV0475

v.

John C. Wasserman                                     **DECISION AND JUDGMENT**

　　　　Appellee                                        Decided:  May 26, 2023

* * * * *

Charles William Bair, for appellant.

Jean Ann S. Sieler and Kayla L. Henderson, for appellee.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal by appellant, Keith W. Kaltenbach ("Keith"), from the

May 13, 2022 judgment of the Wood County Court of Common Pleas, granting summary

judgment to appellee, John C. Wasserman, upon finding that Keith failed to timely file the legal malpractice action. For the reasons set forth below, we affirm.

{¶ 2} Keith sets forth one assignment of error:

The trial court erred in finding that the attorney-client relationship * * * ended [no later than] December 9, 2019, when Attorney Wasserman gave. [Keith] a sworn statement to be filed with the Lucas County Probate Court and when [Keith's] wife requested a final bill from him.

**Background**

{¶ 3} The following facts are relevant to this appeal. This case stems from conflicting financial claims by heirs in connection with the estate of Mabel Kaltenbach ("Mabel"), Keith's grandmother, who passed away on October 19, 2018.

{¶ 4} Prior to Mabel's death, Keith cared for her and her home, and in December 2014, Mabel named Keith as her agent under a power of attorney. Keith's authority to act under the power of attorney terminated upon Mabel's death. On October 31, 2018, following Mabel's death, a quit-claim deed was recorded wherein Keith, using the power of attorney, granted himself one-half interest in decedent's real estate. Keith did so in contravention of the power-of-attorney and fiduciary provisions in Mabel's will. On November 1, 2018, a survivorship deed was recorded, granting all of Mabel's real estate to her daughter.

2.

*Probate Court Actions*

{¶ 5} On January 7, 2019, an application to administer Mabel's estate was filed in Lucas County probate court.

{¶ 6} On February 12, 2019, Robert Kaltenbach ("Robert"), Mabel's son and Keith's father, filed suit in Lucas County probate court against, inter alia, Keith alleging wrongdoing by Keith in connection to Mabel's estate ("probate litigation"). Specifically, Robert alleged that Keith engaged in undue influence over Mabel, breached his fiduciary duties to Mabel, and unlawfully converted portions of her real property and monies to himself (Keith).

{¶ 7} On February 28, 2019, Keith met with attorney Wasserman to discuss engaging him as legal counsel to defend him in the probate litigation. At the conclusion of the meeting, Keith retained Wasserman and the firm to represent him concerning probate-related matters, which included the probate litigation and the admission of Mabel's will and administration of her estate with Keith as executor. Keith executed a legal representation fee agreement.

{¶ 8} The record reflects that from the onset of the attorney-client relationship, Keith repeatedly emphasized to Wasserman his concerns with the costs of legal representation, and expressed a desire to keep the legal fees to a minimum. Based upon Keith's cost concerns, in conjunction with Wasserman's professional evaluation of the merits of the case, in or about early June 2019, Wasserman sought to explore resolving

3.

the probate litigation via mediation, which was more cost-effective. Keith agreed. Wasserman advised Keith that mediation would entail pausing active litigation, including discovery and the filing of potential counterclaims against Keith's father, to avoid additional fees, and active litigation would resume if mediation failed. Again, Keith agreed.

{¶ 9} Lastly, in order to minimize costs, Keith agreed to personally perform many of the perfunctory mediation preparation tasks for Wasserman, such as assembling, organizing, and furnishing to Wasserman all of Keith's supporting documentation needed by Wasserman to negotiate on Keith's behalf at mediation.

{¶ 10} Mediation was scheduled for August 15, 2019.

*Mediation Preparation*

{¶ 11} The record reflects that Wasserman experienced considerable difficulties regarding Keith's agreement to perform these preparatory tasks prior to mediation. The record shows that despite having a few months in which to assemble, organize, and deliver the supporting documentation to Wasserman, Keith failed to do so until the day before the mediation. The materials which Keith did deliver to Wasserman lacked the substantive details that Wasserman had repeatedly advised Keith were needed. Further negatively impacting the strength of Wasserman's position on behalf of Keith, the dates on the documents which were furnished by Keith reflected that any claims premised upon those documents would already be untimely for active litigation purposes.

4.

*Mediation*

**{¶ 12}** On August 15, 2019, the mediation was held at the Wood County Court of Common Pleas. Keith's father made an initial mediation settlement demand of Keith of $90,000, along with the transfer of assorted personal property and vehicles. Ultimately, following exhaustive negotiations, the probate litigation was voluntarily settled with Keith consenting to pay his father $5,000, and to relinquish certain items of personal property to his father. On that same day, Keith voluntarily executed a mediation settlement agreement, memorializing the terms agreed upon between, inter alia, Keith and his father, in order settle all of father's claims in the probate litigation.

*Settlement*

**{¶ 13}** On November 2, 2019, in performance of the steps necessary to satisfy and complete the terms of the mediation settlement agreement, the parties and their attorneys met in a neutral, agreed-upon location, and exchanged the settlement payment and the property items.

*Dismissal of Probate Litigation*

**{¶ 14}** Thereafter, on November 13, 2019, a joint notice of dismissal of the probate litigation was filed by the parties with the trial court, and on November 15, 2019, the trial court dismissed and closed the probate litigation.

5.

*Mabel's Estate*

{¶ 15} As noted above, an application to administer Mabel's estate was filed in Lucas County probate court on January 7, 2019. Although the record does not indicate who did file the application, Keith did not file it.

{¶ 16} On March 11, 2019, Keith filed, inter alia, Mabel's will and an application for authority to administer Mabel's estate in Lucas County probate court. The estate matter proceeded with Keith filing, inter alia, a Sworn Statement in Lieu of an Account and Inventory on June 18, 2019.

{¶ 17} After the August 2019 mediation and settlement, there were no assets in Mabel's estate. Wasserman prepared and finalized the Sworn Statement in Lieu of Inventory, First and Final Account ("last statement") on November 25, 2019. Wasserman's paralegal emailed the last statement to Keith on November 26, 2019. On December 4, 2019, the paralegal sent the last statement to Keith with a letter, indicating that Wasserman's office had been trying to contact Keith, as the last statement had to have Keith's notarized signature and must be filed with the probate court by December 12, 2019; the paralegal offered for Wasserman's office to notarize Keith's signature and file the last statement with the probate court.

{¶ 18} Keith personally filed the last statement with the probate court on December 12, 2019. Mabel's estate case was closed on December 13, 2019.

6.

*Invoice for Legal Services*

**{¶ 19}** On December 9, 2019, Keith's wife emailed Wasserman, requesting a copy of the bill from the very beginning of the case to the end.

*Legal Malpractice Action*

**{¶ 20}** On December 10, 2020, Keith filed a complaint against Wasserman for legal malpractice, alleging that Wasserman failed "to raise as an effective defense the counterclaim available to [Keith], [thus] he was seriously disadvantaged and required to pay estate funds to his father without any corresponding reimbursement to the estate."

**{¶ 21}** In elaborating on the basis of his malpractice claim against Wasserman, Keith testified at his deposition that "after I thought about it, I was just * * * why, why did I have to give up [$5,000] when my aunt [a co-defendant] only had to give up $2,500 * * * I [gave] too much [at the mediation]."

**{¶ 22}** On April 2, 2021, Wasserman's law firm ("the firm") filed an intervenor complaint against Keith, setting forth, inter alia, a breach of contract claim.

*Motion for Summary Judgment*

**{¶ 23}** On February 25, 2022, Wasserman and the firm filed a motion for summary judgment, in which Wasserman asserted, inter alia, that Keith's legal malpractice action was time-barred by the statute of limitations as the termination of the attorney-client relationship occurred more than one year before Keith filed suit. Wasserman argued he prepared the last statement on November 25, 2019, and his staff

7.

emailed it to Keith the next day for his signature. Wasserman noted that he testified at his deposition that Keith picked up the last statement from the firm to file himself, as "[h]e [Keith] stated that he wanted to file that, * * * that we were done on the resolution with * * * his father and this had to be done and that wrapped it up."

{¶ 24} In addition, Wasserman submitted that Keith's affirmative step to forgo further legal services and finish the probation administration himself is indicative of the termination of relationship. In support, Wasserman cited to *Kalski v. Bartimole*, 2020-Ohio-4137, 157 N.E.3d 436, ¶ 38, 41 (8th Dist.):

> "Pro se filings after the rendering of a judgment are evidence that the attorney-client relationship has been terminated." *Triplett v. Benton*, 10th Dist. Franklin No. 03AP-342, 2003-Ohio-5583, 2003 WL 22390065, ¶ 16 [.]
>
> * * *
>
> There is no allegation that [the attorney] performed any legal work for [the client] or provided [the client] any legal counsel at any time following the [grievance] letter, further evidencing a termination of the part[ies'] professional relationship. *See Socha* [*v. Weiss*, 8th Dist. Cuyahoga No. 105468], 2017-Ohio-7610, 97 N.E.3d 818, at ¶ 20 (the absence of counsel providing additional legal services beyond the

conclusion of a probate matter demonstrated termination of the attorney-client relationship).

{¶ 25} Wasserman also contended that Keith's wife sent an email to Wasserman, on Keith's behalf, on December 9, 2019, requesting a final copy of the bill for legal services, which is further evidence of the client's actions to terminate the attorney-client relationship. Wasserman cited to Keith's deposition testimony, where Keith was asked "In your eyes you were getting the final bill from the beginning until the very end at that point?" Keith replied "In December? * * * True." Wasserman claimed Keith clearly viewed the attorney-client relationship as concluded no later than December 9, 2019.

*Opposition to Motion for Summary Judgment*

{¶ 26} On March 29, 2022, Keith filed an opposition to the motion for summary judgment. Keith observed there was no dispute that his agreement with Wasserman involved the defense of the probate litigation and the administration of Mabel's will and estate. Keith argued that the representation continued through and including the filing of the last statement for Mabel's estate, with Wasserman's certification at the bottom, which was not completed until December 12, 2019. Keith offered the probate court docket that showed the last statement for Mabel's estate was filed December 12, 2019, which concluded the administration of the estate.

9.

**{¶ 27}** Keith further argued that when he received his file from Wasserman's office, the file contained a date-stamp indicating the matter was closed on December 31, 2019. Keith maintained since his complaint against Wasserman was filed on December 10, 2020, it was timely filed.

*Summary Judgment Granted*

**{¶ 28}** On May 13, 2022, the trial court granted summary judgment to Wasserman and dismissed Keith's complaint, and granted summary judgment to the firm - on its breach of contract claim - against Keith. The trial court made several findings.

**{¶ 29}** First, "[t]he cognizable event that put [Keith] on notice, or should have put him on notice, to investigate the facts and circumstances relevant to a possible legal malpractice claim took place at the mediation held on August 15, 2019."

**{¶ 30}** Second, "[w]ork related to the probate litigation matter ended when [Keith] transferred certain items of personal property and the sum of $5,000 to his father on November 2, 2019. The parties signed a settlement and mutual release agreement and a notice of dismissal was filed on November 13, 2019."

**{¶ 31}** Lastly, "[t]he attorney-client relationship terminated no later than December 9, 2019, the date [Keith's] wife requested and received the final bill * * * since the cognizable event took place on August 15, 2019, and the attorney-client relationship terminated no later than December 9, 2019, [Keith's] legal malpractice claim began to toll on the later of those dates, December 9, 2019." Based on the totality of these

10.

findings, the trial court held, "[b]ecause [Keith] filed his complaint on December 10, 2020, his legal malpractice claim is barred by the statute of limitations."

{¶ 32} Keith appealed.

**Assignment of Error**

{¶ 33} In the sole assignment of error, Keith asserts that the trial court erred in its summary judgment determination that the attorney-client relationship between the parties ended no later than December 9, 2019, such that Keith's December 10, 2020 legal malpractice filing was time-barred by R.C. 2305.11(A).

{¶ 34} Keith submits the termination of the attorney-client relationship is determined by the latest date of Wasserman's engagements for the two probate matters: the probate litigation and Mabel's estate. Keith maintains the probate litigation was dismissed on November 13, 2019, but the matter of Mabel's estate continued into December 2019. Keith contends Wasserman prepared the last statement, which had to be signed by Keith as executor of his grandmother's estate, and Keith picked up the last statement from Wasserman and took it to the probate court for filing on December 12, 2019.

{¶ 35} Keith notes the probate court docket reveals that he was the fiduciary for Mabel's estate and Wasserman was the attorney for the estate, and no portion of the docket for Mabel's estate shows that Wasserman withdrew as the attorney for Keith and the estate. Keith further observes the docket shows that the judgment entry approving the

11.

last statement prepared by Wasserman was filed in the probate court on December 12, 2019, and the case was closed on December 13, 2019.[1]

{¶ 36} Keith also maintains that despite the trial court's reliance on his wife requesting a copy of the "final bill" from Wasserman, the issue of whether further work was need on Mabel's estate could not have been determined at the time the request was made, since the last statement had not been filed. Keith asserts Wasserman, as the attorney of record before the probate court, would have been called upon to respond until December 13, 2019, when the case was closed.

**Standard of Review**

{¶ 37} It is well-established that appellate court review of disputed summary judgment decisions is done on a de novo basis. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 671 N.E.2d 241 (1996). In *Lowe v. Local Union No. 14 U.A.W.*, 6th Dist. Lucas No. L-19-1042, 2020-Ohio-703, 145 N.E.3d 363, ¶ 14, we held "[u]nder the de novo standard, we undertake our own independent examination of the record and make our own decision as to whether the moving party is entitled to summary judgment. *Dupler v. Manfield Journal*, 64 Ohio St.2d 116, 413 N.E.2d 1187 (1980)."

{¶ 38} Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R.

---

[1] We note there is a reference in the record to emails and a telephone call between Keith and Wasserman, in May 2020, regarding a key fob to a motorcycle. Keith did not raise these exchanges in his arguments as a basis for the continuation of the attorney-client relationship, therefore we will not consider them.

56(C).  A motion for summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact," show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  *Id.*

{¶ 39} The moving party has the burden of demonstrating that no genuine issue of material fact exists.  *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The burden then shifts to the nonmoving party to provide evidence showing that a genuine issue of material fact exists.  *Id.* at 293.

## Law

{¶ 40} R.C. 2305.11(A) sets forth a one-year limitation period for bringing legal-malpractice claims.  In order to determine when that period commenced, the Ohio Supreme Court has established a disjunctive test:

> Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.  *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), syllabus.

13.

{¶ 41} Under *Zimmie's* termination rule, courts look for an act or acts by either the attorney or the client which signals the severing of their relationship. *Smith v. Conley*, 109 Ohio St.3d 141, 2006-Ohio-2035, 846 N.E.2d 509, ¶ 12. The "determination of when the attorney-client relationship for a particular transaction terminates is generally a question of fact * * * [however,] where the evidence is clear and unambiguous, so that reasonable minds can come to but one conclusion from it, the matter may be decided as a matter of law." *Trombley v. Calamunci, Joelson, Manore, Farah & Silvers, L.L.P.*, 6th Dist. Lucas No. L-04-1138, 2005-Ohio-2105, ¶ 43. Conduct which a court looks to includes an attorney not providing any additional legal services to the client. *Id.* at ¶ 46. *See also Woodrow v. Heintschel*, 194 Ohio App.3d 391, 2011-Ohio-1840, 956 N.E.2d 855, ¶ 48 (6th Dist.).

### Analysis

*Cognizable Event*

{¶ 42} Pursuant to *Zimmie*, we first look at the cognizable event portion of the analysis to determine when Keith should have discovered, and was thereby been put on notice of, alleged legal malpractice by Wasserman.

{¶ 43} Upon review, the crux of Keith's legal malpractice claim was that Wasserman negotiated mediation settlement terms with respect to the probate litigation which were not sufficiently favorable to Keith.

14.

{¶ 44} The record reveals that Keith and Wasserman jointly selected the mediation route as the best, mutually acceptable course of action to attempt to resolve the probate litigation, based upon Keith's legal fee minimization objective. The mediation of the probate litigation was held on August 15, 2019, and the probate litigation was settled that same day.

{¶ 45} We find that Keith should have first discovered, and been on notice of, the potential need to pursue claims against Wasserman in connection to the agreed upon terms of the mediation settlement agreement on August 15, 2019. The record shows this was the day that Keith actively participated in the mediation settlement negotiations, agreed to, and signed off on, the now disputed mediation settlement terms. Accordingly, we find that the *Zimmie* cognizable event occurred on August 15, 2019.

*Termination of Attorney-Client Relationship*

{¶ 46} Since the cognizable event occurred more than one year before Keith filed his legal malpractice action, we must next determine whether the attorney-client relationship between Keith and Wasserman extended past that point as, pursuant to *Zimmie*, the latter of the two events begins the running of the one-year statute of limitations.

{¶ 47} The record reflects that Keith's legal malpractice action against Wasserman was premised upon Wasserman's legal representation of Keith in the probate litigation

15.

brought against Keith by his father, and more specifically, the settlement negotiated by Wasserman, on Keith's behalf, in the mediation action.

{¶ 48} The record shows that following the mediation and the settlement reached on August 15, 2019, which was memorialized in a written mediation settlement agreement, Keith and his father met in person, with counsel, on November 2, 2019, and completed the remaining actions required to finalize the terms of the settlement. On November 13, 2019, a notice of dismissal of the probate litigation was filed with the probate court. On November 15, 2019, the probate litigation was dismissed and closed by the probate court.

{¶ 49} The record further shows the firm's invoice, dated "12/20/2019," provides the last date that legal services were rendered by Wasserman for "KEITH W. KALTENBACH" concerning "Probate related matters" was "11/26/2019." More specifically, the invoice reflects that Wasserman prepared the last statement for Mabel's estate on November 25, 2019, Wasserman's paralegal emailed the last statement to Keith on November 26, 2019, and sent the last statement to Keith, with a letter dated December 4, 2019. Then, on December 9, 2019, Keith's wife requested and received Wasserman's final invoice. Keith personally filed the last statement with the probate court on December 12, 2019.

{¶ 50} Upon review, we find that Wasserman presented evidence, in support of the motion for summary judgment, that the attorney-client relationship between himself and

16.

Keith terminated, at the latest, on December 9, 2019, when the final invoice for legal services was requested and provided to Keith's wife. Wasserman also presented evidence that the last time he or his staff conducted any probate-related matter was when his paralegal wrote Keith a letter, on December 4, 2019, informing him about the last statement which had to be signed and filed with the probate court. Wasserman offered Keith's actions of filing the last statement with the probate court himself, and not having Wasserman or his staff file the last statement, as evidence that the attorney-client relationship had ended. In addition, Wasserman presented Keith's deposition testimony as evidence that the attorney-client relationship ended in early December 2019, as Keith clarified and agreed that in December 2019, he received the final bill from Wasserman "from the beginning until the very end."

{¶ 51} We therefore conclude Wasserman offered proof of affirmative acts by Keith which indicated and constituted the end of the attorney-client relationship. As such, we conclude Wasserman met his burden of demonstrating that no genuine issue of material fact existed, and the attorney-client relationship ended no later than December 9, 2019.

{¶ 52} Concerning Keith's reciprocal burden to provide evidence showing that a genuine issue of material fact existed, Keith offered proof that the administration of Mabel's estate concluded December 12, 2019, and his file from Wasserman's office contained a date-stamp of December 31, 2019, indicating the matter was closed.

17.

**{¶ 53}** Upon review, we find evidence that Keith's grandmother's estate concluded after Keith himself filed the final statement with the probate court, and the date-stamp on Keith's file that it was closed on December 31, 2019, are not proof of legal services or activities involving Wasserman which could be the basis for an inference that the attorney-client relationship continued after December 9, 2019. Hence, Keith failed to carry his burden of establishing a triable issue of fact that the attorney-client relationship extended beyond December 9, 2019.

**{¶ 54}** We therefore conclude the evidence concerning the conduct of Keith and Wasserman is clear and unambiguous, so that reasonable minds can come to but one conclusion, and that is the attorney-client relationship terminated by December 9, 2019, at the latest. Consequently, we find for the purposes of the *Zimmie* test, the attorney-client relationship ended by December 9, 2019.

**{¶ 55}** In light of the foregoing, we find that Keith's December 10, 2020 legal malpractice complaint against Wasserman was not timely filed, pursuant to R.C. 2305.11(A). As such, we find the trial court properly granted summary judgment to Wasserman. Accordingly, we find Keith's sole assignment of error not well-taken.

**{¶ 56}** The May 13, 2022 judgment of the Wood County Court of Common Pleas is affirmed. Keith is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

18.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                    _____
                                                            JUDGE

Myron C. Duhart, P.J.

                                        _____
Charles E. Sulek, J.                                     JUDGE
CONCUR.

                                        _____
                                                            JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.